UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | |
|---|---|
| In re<br><br>ANCHOR REEF CLUB AT BRANFORD, LLC,<br><br>　　　　Debtor(s).<br><br>ANCHOR REEF CLUB AT BRANFORD, LLC,<br><br>　　　　Movant.<br><br>v.<br><br>HRP ASSOCIATES, INC.,<br><br>　　　　Respondent. | CASE NO. 17-21080 (JJT)<br><br>(Chapter 11)<br><br>Re: ECF No. 104 |

**STIPULATED ORDER**

**WHEREAS**, Anchor Reef Club at Branford, LLC ("Anchor Reef" or "Debtor") and HRP Associates, Inc. ("HRP") enter into this Stipulated Order regarding and to resolve the pending Motion for Turnover of Documents and Records Under 11 U.S.C. § 542(e) (ECF No. 60) (the "Turnover Motion");

**WHEREAS**, on or about October 16, 2002, Anchor Reef engaged HRP to perform certain services, in connection with real property owned by Anchor Reef at Indian Neck Avenue and 60 Maple Street, Branford, Connecticut (the "Premises");

**WHEREAS**, HRP completed some of the projects relating to the Premises, and final reports were issued for the following projects, hereinafter ("Final Reports"):

Case 17-21080    Doc 136    Filed 06/26/18    Entered 06/26/18 17:25:06    Desc Main
            Document      Page 2 of 9

| | Project Number | Subject Matter |
|---|---|---|
| 1. | ANC0001.RA | Phase 1 ESA 7/29/03 |
| 2. | ANC0002.P2 | Phase 2 reports, Schedule letters, waste disposal, status reports, SIP notice, etc. |
| 3. | ANC0001.RA | Remedial Action scope of work, schedule, PCB remediation report, asbestos survey, file reviews, HASP, tank removals, waste disposal |
| 4. | ANC0002.P2 | Phase 2/3 Report 10/17/05 |
| 5. | ANC0002.P3 | See ANC0002.P2 above |
| 6. | ANC0002.RA | RAP, RAC remediation, PCB investigation/remediation 2004, 2005, 2006 |
| 7. | ANC0006.PC | Coastal Permit Appl., Consent Order Penalty payment, Water service approvals, Wetland Plan, Construction notification, Wastewater permit, Drainage report, etc. 2004, 2005, 2007 |
| 8. | ANC0010.WM | CT NDDB Review Request Form 2000, Draft Application Dept of the Army Permit 2004, Wetland Restoration Plan Revisions 2004 |
| 9. | ANC00012.P1 | ECAF Bldg 4 2005 |
| 10. | ANC00013.P1 | ECAF Roadway 2006 |
| 11. | ANC00014.P1 | ECAF Bldg 1 2006 |
| 12. | ANC0015.BA | ACM Status, Basement Bldg 4 2007 |
| 13. | ANC0017.CE | Application for Review of Coastal Site Plans, 10/8/12 |

**WHEREAS**, not all projects were completed on the Premises and HRP terminated and ceased performing any environmental services in or around 2014, including for the following projects, which included soil remediation (hereinafter "Unfinished Work"):

| | Project Number | Subject Matter |
|---|---|---|
| 14. | ANC0007.RA | PCB soil remediation 11/15/04 |
| 15. | ANC0016.RA | Updated PCB Soil Remediation 2010 |

**WHEREAS**, Debtor did not complete its site investigation or remediation on the Premises;

**WHEREAS**, on July 19, 2017, (the "Petition Date"), Anchor Reef filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court") (Case No. 17-21080);

**WHEREAS**, Anchor Reef has made demand upon HRP pursuant to 11 U.S.C. § 542(e) to produce documents related to the Premises;

**WHEREAS**, the contract between Debtor and HRP provided that "All reports, boring logs, field notes, laboratory date, calculations, research and other documents and information prepared by HRP or its subcontractors are instruments of service and shall remain the sole property of HRP. Such documents and information [that] are delivered to the Client[ ] are for the Client's use only, and **are not to be relied upon by any other party**, unless agreed to by HRP in writing" (emphasis added);

**WHEREAS**, the contract between Debtor and HRP provided that Anchor Reef would indemnify HRP "from and against all claims, suits, fines, penalties, and attorneys fees . . . that arise out of or are related to" HRP's provision of services to Anchor Reef;

**WHEREAS**, HRP objected to production of documents related to the work HRP performed at the Premises, including by filing a supporting affidavit ("Affidavit") (ECF No. 63 at 12-76),

**WHEREAS**, all licensed environmental professionals ("LEPs"), including HRP and any LEP later hired by the Debtor, are subject to various rules of conduct as prescribed by the Connecticut Department of Energy and Environmental Protection;

**WHEREAS**, HRP does not have any current information about whether conditions at the Premises pose a risk to the health, safety, and welfare of the public or

3

the environment, but wishes to safeguard against the possibility that such a risk materializes;

**WHEREAS**, HRP does not have any current information about conditions existing at the time its services were rendered that would lead to a conclusion or recommendation contrary to one expressed in any final report that was issued by HRP;

**WHEREAS**, by entering into and acting pursuant to the terms of this Stipulated Order, HRP is not acting in its capacity as a licensed environmental professional, is not providing professional services, and is providing information over its objection and subject to the terms and conditions of this Stipulated Order;

**WHEREAS**, for the reasons set forth above, and pursuant to the terms of its contract with Anchor Reef, HRP does not and will not represent, warrant, or guarantee the accuracy of site conditions, assessments, data, lab results, or methods in the Final Reports or Unfinished Work;

**WHEREAS**, the Debtor and its estate understand that HRP contends that the work product may not be suitable for use or relied upon unless it is re-evaluated and determined to meet the current standard of care, by, for example, having a licensed environmental professional conduct confirmatory sampling.

***NOW THEREFORE,*** in consideration of and reliance upon the mutual covenants and agreements set forth herein, the Parties agree as follows:

1. HRP shall provide to the Debtor, within six weeks of entry of this Order, an electronic copy Final Reports and the attachments thereto.

2. HRP shall provide to the Debtor electronic or paper records (excluding all e-mails), to the extent such records exist, relating to the Final Reports and the Unfinished Work and work in furtherance of the remediation of the site, and in particular:

    a. Any files of daily inspection(s) during the period of remediation at the Premises that took place simultaneous with construction, including tables of soil quantities transported and disposed from each remediation area; and

    b. Any maps and tables from all remedial excavation sidewall and base sampling results at the Premises, including lab results.

The Final Reports, the Unfinished Work and documents referred to above are referred to together herein as the "Work Product."

3. After delivering the Work Product to the Debtor, HRP shall have no obligation to answer or respond to questions relating to the documents provided, and shall have no further obligation to produce any additional documents or records.

4. Debtor and its estate, successors, legal representatives, assigns waive and release any and all claims in connection with HRP's work for the Debtor and at the Premises.

5. Debtor, its estate, and legal representatives, agree that the Work Product is to be consulted by them and/or any third parties at their own peril and without any liability to HRP, and that no representations, warrantees, or guarantees have been or will be made by HRP about the accuracy of site conditions, assessments, data, lab results, or methods in the Work Product.

6. Debtor and its estate, and its legal representatives may provide access to the Work Product to its licensed environmental professional, the Anchor Reef Association, and S*** Building and Development, LLC, or any other person or entity that desires to bid on the Premises (each, a "Recipient"); *provided, however*, that no access shall be given by the Debtor until any such Recipient first duly executes a document substantially in the form of Exhibit A attached hereto that (i) releases HRP; (ii) acknowledges that the Work Product is to be consulted at the user's own peril and without any liability to HRP; (iii) acknowledges that no representations, warrantees, or guarantees have or will be made by HRP about the accuracy of site conditions, assessments, data, lab results, or methods in the Work Product; and (iv) agrees that such documents may not be distributed by any Recipient to any persons or entities other than those that are employed or retained in an expert capacity for the Recipient and that such persons or entities may be provided access to such documents only after such persons or entities execute a document substantially in the form of Exhibit A and provide it to the Recipient who has granted access. No Recipient or other person or entity shall access to the Work Product until and unless a copy of the duly executed release substantially in the form of Exhibit A is first provided to counsel for HRP. All Recipients shall be provided a copy of this Stipulated Order and all Recipients shall provide a copy of this Stipulated Order to any person or entity that is provided the Work Product or any portion thereof.

7. Notwithstanding anything else set forth herein, nothing in this order shall prevent or be construed to prevent Anchor Reef's licensed environmental professional (who has executed a document substantially in the form of Exhibit A attached hereto)

6

from using the documents to complete and file a remedial action report and other associated required filings without requiring a release of the entity which is receiving the filed report, and to otherwise comply with the requirements of Connecticut law and regulation.

8. Debtor and its estate, shall defend, indemnify, and save HRP, its officers, directors, employees, agents, subcontractors and affiliates from and against all claims, suits, fines, penalties, and attorney's fees that arise out of or are related to the services HRP provided to the Debtor, *provided, however*, that nothing in this paragraph shall require the Debtor and its estate to maintain a reserve in any liquidating plan of reorganization or other liquidation as a result of or to secure its obligation to defend, indemnify and save harmless.

9. Upon execution of this Agreement and upon entry of a Court Order approving this Agreement, Anchor Reef shall pay or cause to be paid to HRP a fee of Twenty-Two Thousand Dollars ($22,000) to compensate HRP for the time and effort of searching for and reviewing records in order to produce the aforementioned records.

10. This Agreement shall be governed by and construed in accordance with the laws of the United States of America, and then the laws of the State of Connecticut, excluding any choice of law principles.

11. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, successors, legal representatives, and assigns.

12. In the event of any litigation arising out of or to enforce the provisions of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys'

fees, paralegal fees and costs from the non-prevailing party including and any and all fees incurred at appellate levels and post-judgment proceedings.

13. The Parties represent and acknowledge that they have respectively taken all actions necessary to authorize the entering into and the performance of all of their respective obligations under this Agreement. The Parties further represent and acknowledge that they have all necessary legal power and authority to enter into and perform all of their respective obligations under this Agreement.

14. The Parties acknowledge that each has had the assistance of legal counsel in the drafting and review of this Agreement and, therefore, any ambiguity which might appear in this Agreement shall not be construed against any Party.

15. With the execution of this Agreement, the Parties hereto acknowledge and agree that they have carefully read and understand the terms of this Agreement; they have signed this Agreement freely and voluntarily and without duress or coercion and with full knowledge of its significance and consequences; and the only consideration for signing this Agreement is the terms stated herein and no other promise, agreement or representation of any kind has been made by any person or entity whatsoever to cause any party hereto to sign this Agreement.

16. This Agreement is contingent on Bankruptcy Court approval and shall become effective upon execution by all Parties hereto, delivery of the signed execution pages by each party to counsel for the others and HRP's receipt of the $22,000.00 fee set forth above.

HRP ASSOCIATES, INC.

ANCHOR REEF AT BRANFORD, LLC

Digitally signed by Timothy Miltenberger

**IT IS SO ORDERED** at Hartford, Connecticut this 26th day of June 2018.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut